## National Cash Register Company v. Williams.

(Decided December 11, 1914.)

Appeal from Kenton Circuit Court
(Common Law and Equity Division).

1. **Appeal—Former Appeal—Submission to Jury.—**Where there is no essential difference in the testimony upon two trials, the opin-

ion of this court upon a former appeal is conclusive of the question whether the case was properly submitted to the jury.

2.   Instructions.—The instructions when read together so submitted the question of appellant's liability, and the liability of its agent if he was acting as an independent contractor, as that they could not well have been misunderstood by the jury.

3.   Negligence—Principal and Agent—Failure to Return Verdict Against Agent.—The contention of appellant that the failure to find a verdict against the agent whose negligence was the cause of the accident was in effect a verdict that he had not been guilty of negligence, and therefore there should not have been a verdict against his principal, is settled against such contention by decisions of this court upon this question.

STEPHENS L. BLAKELY, GEO. E. PHILIPPS, C. D. BRONSON and JOHN H. KLETTE for appellant.

ROBT. C. SIMMONS for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

This is the second appeal of this case. (Williams v. National Cash Register Co., 157 Ky., 836).

A buggy in which appellee was driving on the streets of Covington in June, 1911, collided with an automobile driven by Todd Meadows, an employe of Bert Alexander, a sales-agent of appellant, who maintained an office in the City of Cincinnati, but whose territory covered Kenton and Campbell counties in this State.

The action was instituted against Meadows and the National Cash Register Company, the allegations being, in substance, that the accident which resulted in injuries to the plaintiff, was brought about by the negligence of Meadows, who at the time was the agent of and acting for the National Cash Register Company, and engaged in its business.

On the first trial in the lower court a verdict was returned against Meadows which was subsequently set aside, but the court sustained a motion made by the National Cash Register Company and directed a verdict in its favor. From that judgment an appeal was prosecuted by the plaintiff, and resulted in the opinion of this court above referred to. In that opinion the court, after a full discussion of the evidence and an exhaustive investigation of the terms of the contract between Alexander and the National Cash Register Company, held that there was sufficient evidence that Meadows at the time of the accident was engaged in the.

business of the National Cash Register Company to justify the submission of that question to the jury.

Upon the return of the case another trial was had which resulted in a verdict and judgment for $6,500, from which this appeal is prosecuted.

Alexander, while operating his business chiefly as an agent for the National Cash Register Company, had and operated in connection with it a repair shop at which he not only did repair work which the company under its contract was obligated to make, but also did repair work on cash registers on his own account and independent of his contract with the company. The whole controversy here revolves around the question whether, at the time of the accident, Meadows was delivering a register which Alexander had repaired under his contract with the National Cash Register Company and in his capacity as its agent, or whether he was delivering a register which had been repaired by Alexander individually, and was being delivered independent of his contract of agency with the company.

There seems to be no doubt under the evidence that at the time of the accident Meadows was delivering a cash register to one Shotwell at Latonia, Kentucky, but *what* cash register that was seems to be the point of difference. In May, 1906, Shotwell bought a cash register from the company, and in April, 1911, as he testifies, he bought another one, the old one being taken in by the company in part payment for the last one.

Under the contract between Shotwell and the company, at the time of the last purchase by Shotwell, which was made through Alexander's agency, the company contracted to keep the register in repair for two years without expense to Shotwell. Now it is the theory of the plaintiff that this machine, which the company was under contract to repair, was the one which was being delivered when the accident happened, while it is the contention of the company that the register which was being delivered was one which had been repaired by Alexander at his shops under a contract with Shotwell with which the company had nothing to do, and that therefore as to that transaction he was an independent contractor and the company was not liable for his negligence.

The evidence upon this issue on the last trial was not substantially different from what it had been on the former trial.

The opinion of this court on the former appeal, there being no essential difference in the testimony of the two trials, is conclusive of the question whether the case was properly submitted to the jury.

While the weight of the evidence, in numbers at least, may be said to be upon the side of appellant to the effect that on the day of the delivery of the machine Shotwell paid Meadows for the repairs thereon, which is treated by the company as conclusively showing that the register that day delivered could not have been the one sold to Shotwell in April, 1910, which the company was under contract to keep in repair without expense to him for two years. On the other hand, Shotwell and another man, who was present, testified that no such payment was made; and in addition to that there is the uncontradicted statement of Shotwell that the company took in the old register as part payment on the new one at the time he purchased the latter in April, 1910. We do not feel justified in usurping the functions of the jury by holding that the verdict was palpably against the weight of the evidence.

The first instruction is objected to by the appellant because it says the court did not distinguish therein the difference between repairs made under the contract by Alexander for himself individually and by Alexander for the company. The instruction submitted this issue as follows:

"And, if the jury shall further believe from the evidence that the defendant, Meadows, was at that time delivering a cash register upon which repairs had been made by Alexander under the contract between the defendant National Cash Register Company and Alexander, then the delivery was for the defendant National Cash Register Company and it is liable for said injuries jointly with the defendant, Meadows, and the jury will so find."

It is the argument for appellant that this language does not fairly submit the issue in view of the fact that under one clause of the contract between Alexander and the company he was required to make repairs on registers whether they were to be made free of charge or not. But even if this language be treated as inexplicit and somewhat confusing in the submission of that issue, the defect was certainly cured by the language employed by the court in the second instruction, which was intended

as the converse of the first. The second instruction is wound up with this language:

"Or, if the jury shall believe from the evidence that the defendant, Meadows, was at the time of the accident delivering a cash register upon which repairs had been made by Alexander individually, and not under his contract with the defendant, National Cash Register Company, then the jury will find a verdict for the defendant, National Cash Register Company."

Certainly this language in connection with that used in the first instruction could not have well been misunderstood by the jury.

It is also complained by appellant that the instructions did not submit the question whether or not the delivery of the register was required to be made under the contract between appellant and Alexander; but under the language of the former opinion, which, of course, is the law of this case, if Meadows was at the time of the accident delivering a repair job done by Alexander under the contract, the delivery was being made for the company and it is liable. In other words, if Meadows, when the accident happened, was engaged in the business of the company it matters not whether Alexander, under the terms of the contract, was obligated to make the delivery. The question is was he at the time engaged in the business of the company?

In the light of appellee's testimony we are not impressed with the contention that the verdict is excessive. She testified that she was thrown from the buggy on her head upon a paved street; that the fall resulted in a depression in her skull and in permanent injury; that there was, more or less, paralysis of the left limb from the knee down resulting from the fall; that the hearing of one of her ears had been impaired as a result thereof, and there had been since a discharge from that ear. It appeared on the last trial, which was held three years after the accident, that her ability to do the work which she had previously done was permanently impaired. It would be unprofitable to cite numerous cases where this court has approved higher verdicts for less serious injuries.

The verdict in this case was for $6,500 in favor of the plaintiff against the National Cash Register Company, and failed to mention the name of the defendant Meadows. From this it is argued by the appellant that a failure to find a verdict against Meadows, whose

alleged negligence admittedly was the sole cause of the accident, was in effect a verdict that he had not been guilty of negligence, and that if he was guilty of no negligence there should have been no verdict against the company; and a motion by appellant for a judgment notwithstanding the verdict against it, was entered and overruled by the lower court.

But this is not an open question in this State; in the recent cases of Broadway Coal Co. v. Robinson, 150 Ky., 707, and I. C. Ry. Co. v. Outland's Admx., 160 Ky., 714, this court, adhering to previous decisions on that question, has treated it as settled in this jurisdiction against the contention of appellant.

Judgment affirmed.