JUAN RODRÍGUEZ, menor de edad, representado por su defensor JUAN IRIZARRY RODRÍGUEZ, demandante y apelado, *v.* THE NATIONAL CASH REGISTER Co., demandada y apelante.

No. 3651.—*Visto:* Diciembre 17, 1925.   *Resuelto:* Julio 9, 1926.

1. PATRONO Y EMPLEADO—RESPONSABILIDAD POR DAÑOS A TERCERAS PERSONAS—ACCIONES—DEMANDA—ALEGACIONES EN LA MISMA—NEGLIGENCIA DEL PATRONO EN LA ELECCIÓN DEL EMPLEADO.—En acción fundada en los artículos 1803 y 1804 del Código Civil y dirigida contra una corporación por el daño causado por la negligencia de un empleado de aquélla al actuar en el curso de su empleo, el demandante no necesita alegar en su demanda que el patrono fué negligente en la elección de su empleado.

2. PATRONO Y EMPLEADO—RESPONSABILIDAD POR DAÑOS A TERCERAS PERSONAS—ACCIONES—DEMANDA—ALEGACIONES EN LA MISMA — DEBER DEL PATRONO PARA CON EL TERCERO.—En este caso se alegó que de la demanda no se desprendía deber alguno de la demandada para con el demandante, ni incumplimiento de ese deber para hacerla responsable. *Se resolvió:* que las circunstancias que concurrieron al accidente, especificadas en la demanda, contienen suficientemente las alegaciones de cuya omisión se queja el apelante.

3. Patrono y Empleado—Responsabilidad por Daños a Terceras Personas—Acciones—Demanda—Alegaciones en la Misma—Autoridad del Agente para Emplear al Tercero.—En esta acción—contra un principal por la negligencia de su agente—se objetó la demanda porque no alegaba que el agente estaba autorizado para emplear al demandante. *Se resolvió:* que la alegación estaba implícitamente contenida en las alegaciones y que dada la naturaleza del negocio del agente era lógico que tal autorización se considerase inherente a la agencia.

4. Patrono y Empleado—Actos u Omisiones del Empleado—Daños a Terceros Empleados por un Agente—Doctrina del Co-empleado—Aplicabilidad de la Misma a Puerto Rico.—La doctrina del co-empleado (*fellow-servant*) no es aplicable en Puerto Rico (*Correa* v. *Fajardo Sugar Co.,* 29: 341; *Arzuaga* v. *Ortiz,* 266 Fed. 453).

5. Suspensión *(Continuance)*—Incomparecencia de Testigos—En General.—Dentro de las circunstancias concurrentes, la actuación del tribunal inferior al denegar moción de suspensión de juicio fundada en la no comparecencia de dos testigos *se resolvió* fué correcta.

6. Limitación de Acciones — Computación del Período de Limitación — Comienzo de la Acción u Otro Procedimiento—Caso en que las Alegaciones se Enmiendan—Enmiendas que Amplían las Alegaciones Originales.—Una demanda enmendada que no cambia la causa de acción y que sólo amplía la original consignando más detallada y específicamente los hechos que integran la acción ejercitada, se retrotrae a la fecha de la radicación de la demanda original y puede sostenerse sin consideración al estatuto de prescripción.

Sentencia de *Tomás Bryan,* J. (Mayagüez), declarando con lugar la demanda, con costas. *Confirmada.*

*Manuel Cruz Horta,* abogado de la apelante; *Mariano Acosta Velarde,* y *Federico Acosta Velarde,* abogados del apelado.

El Juez Asociado Señor Franco Soto, emitió la opinión del tribunal.

Esta es una apelación de una sentencia que condenó a la corporación demandada a satisfacer al demandante la suma de $1,000 y costas a consecuencia de caer sobre sus pies y producirle una extensa lesión en el tercio inferior del pie derecho, un aparato conocido con el nombre de "archivo de crédito" y de un peso de más de 125 libras.

Alegó el demandante, en síntesis, que allá el 15 de marzo de 1920, José Casals Valdés, agente o empleado de la demandada, "The National Cash Register Company," requirió al demandante, que entonces contaba menos de 14 años, mediante remuneración, para que le ayudase a cargar y con-

ducir dicho aparato "archivo de crédito" del mostrador de una tienda a una carretilla que se encontraba en la calle; que mientras Casals y el demandante conducían el aparato y en momentos de colocarlo en la carretilla, Casals de una manera negligente y sin el debido cuidado soltó de sus manos el aparato, que dejó caer en los pies del demandante, causándole una herida como de cinco pulgadas de longitud sobre la articulación tibio-fibular; y que a consecuencia de la misma sufrió grandes dolores físicos, viéndose obligado a permanecer recluído en un hospital bajo tratamiento médico por más de seis meses, quedando con defectos físicos en su pierna que durarán toda su vida, dificultándole su desarrollo físico y su trabajo para ganarse el sustento.

Las conclusiones de la corte inferior que sostienen su sentencia, dicen como sigue:

"Que el demandante, Juan Rodríguez, en la fecha a que se refieren los hechos alegados en la demanda era un niño menor de catorce años de edad. Que la demandada es una corporación creada y organizada bajo las leyes del Estado de Ohio, Estados Unidos de América, y debidamente autorizada para hacer negocios en Puerto Rico. Que los aparatos 'Archivos de Crédito' marca 'National,' tienen un peso de más de 125 libras. Que José Casals Valdés, allá por el día 15 de Marzo de 1920, fecha en que ocurrieron los hechos de la demanda, era un empleado de la demandada, dedicado a la venta de artículos 'Archivos de Crédito' marca 'National,' pertenecientes a la corporación demandada y que percibía como remuneración por sus servicios a la demandada una comisión por las ventas que efectuaba de artículos de la demandada. Que el día 15 de Marzo de 1920, José Casals Valdés, empleado de la demandada, y mientras se dedicaba a los negocios de la demandada, consistentes en ofrecer en venta al comerciante de Mayagüez, José Rivera Olán, un 'Archivo de Crédito,' propiedad de la demandada, Casals requirió al demandante que le ayudara a cargar el referido 'Archivo de Crédito' para trasladarlo del mostrador de la tienda del Sr. Rivera Olán a una carretilla que se encontraba en la calle frente a la tienda. Que el demandante y el empleado de la demandada, José Casals Valdés, cargaron el 'Archivo de Crédito,' cogiendo cada uno por los extremos del aparato, y que mientras cargaban así el referido 'Ar-

chivo de Crédito' el empleado de la demandada, José Casals Valdés, soltó sus manos y dejó de cargar por lo que se cayó el aparato sobre el pie derecho del demandante. Que como consecuencia de esto el demandante sufrió una herida en el pie derecho, como de cinco pulgadas de longitud, en el tercio inferior de su pierna derecha, sobre la articulación tibio-fíbula-tercial. Que el demandante estuvo recluído en el Hospital Municipal de Mayagüez y bajo tratamiento médico por más de seis meses. Que el demandante padeció algunos dolores físicos y angustias mentales a consecuencia del golpe y herida recibida, así como durante las curas y tratamiento médico a que fué necesario someterlo. Que la caída del 'Archivo de Crédito' sobre el pie del demandante así como la herida recibida y los daños y perjuicios ocasionados al demandante se debieron sólo y exclusivamente a la culpa, descuido y negligencia del empleado de la demandada José Casals Valdés. Que el demandante ha sufrido daños y perjuicios por la herida recibida, por los dolores físicos causados por la herida y curaciones médicas, por las angustias mentales sufridas y por lo dejado de ganar, en la suma de mil dollars.''

I. Discute la apelante en su primer señalamiento de error que la demanda no aduce hechos suficientes constitutivos de una causa de acción. Varios son los motivos que se aducen y que examinaremos separadamente.

[1] (a) Se sostiene que no se alegó que el patrono fué negligente en la elección de su empleado, siendo ésta una acción que se funda en los artículos 1803 y 1804 del Código Civil. Tal alegación no es necesaria por parte del demandante. La responsabilidad del dueño o principal no termina por el hecho de emplear toda la diligencia de un buen padre de familia en la selección de sus empleados. Debe probarse además como defensa afirmativa que tuvo el cuidado y vigilancia para evitar el daño. Esta Corte Suprema había determinado el alcance del artículo 1804 y en el caso de *Maldonado* v. *The Porto Rico Drug Co.*, 31 D.P.R. 764, se dijo lo siguiente:

"Para juzgar el efecto de esa prueba es necesario fijar antes el alcance del precepto legal invocado. Es igual al párrafo último del artículo 1903 del antiguo Código Civil. La parte apelada no cita jurisprudencia alguna aplicable. Tampoco la hemos encontrado en

el examen que hemos hecho de las sentencias de la Corte Suprema de España. Manresa se limita en sus comentarios a decir lo que sigue:

" 'Réstanos indicar para dejar explicado el alcance o extensión de la responsabilidad impuesta a aquellas personas que deben responder de los daños causados por otros, así como los efectos de esta obligación:

" '1º.—Que dicha responsabilidad cesa cuando las personas a quienes la impone el art. 1903, prueban que emplearon toda la diligencia de un buen padre de familia, estableciéndose en su virtud en dicho artículo una presunción legal de la culpabilidad de las personas citadas en él, pues en razón a las relaciones de autoridad o superioridad que mantienen con los autores del daño causado, la ley presume que les es imputable la causa del mismo por su propia culpa o negligencia, considerándoles como autores morales de dicho daño por no haber puesto de su parte el cuidado o la vigilancia necesaria para evitar que aquéllos dieran origen a él, conforme con cuyo criterio se halla la sentencia de 18 de mayo de 1904 antes citada. Pero esa presunción establecida por la ley no es absoluta o juris et de jure, sino juris tantum, y por consiguiente, cede a la prueba en contrario.'

   *       *       *       *       *       *       *

" 'Nuestro Código no ha seguido la escuela italiana, sino más bien se ha inspirado en el criterio de la doctrina francesa, puesto que impone la obligación de reparar el daño causado en virtud de una presunción juris tantum de culpa por parte del que tiene bajo su autoridad o dependencia al causante del daño, derivada del hecho de no haber puesto el cuidado y la vigilancia debida en los actos de sus subordinados para evitar dicho resultado. Así es, que según el párrafo último del art. 1903, cesa dicha responsabilidad cuando se prueba que los obligados por los actos ajenos, emplearon toda la diligencia de un buen padre de familia. Luego no es la causa de la obligación impuesta la representación, ni el interés, ni la necesidad de que haya quien responda del daño causado por el que no tiene personalidad ni garantías de solvencia para responder por sí, sino el incumplimiento implícito o supuesto de los deberes de precaución y de prudencia que imponen los vínculos civiles que unen al obligado con las personas por quienes debe reparar el mal causado. Por ese motivo coloca dicha obligación entre las que provienen de la culpa o negligencia.' 12 Manresa. Comentarios al Código Civil, 610 y 617.

"Si se diera al precepto el alcance que al parecer pretende la

apelada, sería muy fácil hacer ilusoria cualquier reclamación establecida bajo el amparo del artículo 1804. No basta que se elijan empleados competentes. Esa es una circunstancia a considerar. Debe demostrarse algo concreto en relación con el caso investigado.''

La Corte de Circuito de Apelaciones, Primer Circuito, en el caso de *Arzuaga* v. *Ortiz,* 266 Fed. Rep. 453–55, interpretando en igual sentido dicho artículo 1804, apoyándose en la autoridad de Manresa y en el caso de *Panamá Railroad Co.* v. *Toppin,* 252 U.S. 308, se expresa así:

''Queda por considerar cuáles son los derechos de un empleado en contra de su principal de acuerdo con las disposiciones de las secciones 1803 y 1804 del Código Civil. Estos artículos son revalidación de las antiguas disposiciones del Código Civil Español. El artículo 1803 impone responsabilidad a todas las personas por su negligencia individual y el 1804 establece responsabilidad sobre ciertas personas por la negligencia de sus hijos, pupilos y aprendices, y sobre aquellas que dirigen o conducen un establecimiento o empresa por la negligencia de sus empleados. Por ejemplo:

''Hace al padre, y, por muerte de éste, a la madre, responsable de los perjuicios causados por los hijos menores de edad que viven en su compañía.

''A los tutores por los perjuicios causados por los menores o incapacitados que están bajo su autoridad y habitan en su compañía.

''A los dueños o directores de un establecimiento o empresa por los perjuicios causados por sus dependientes en el servicio de los ramos en los cuales estuvieren empleados o con ocasión de sus funciones;

''A los maestros o directores de artes y oficios por los perjuicios causados por sus alumnos o aprendices mientras permanezcan bajo su custodia.

''Prescribe, sin embargo, que la responsabilidad de que trata este artículo (1804) cesará cuando la persona responsable pruebe que empleó toda la diligencia de un buen padre de familia para prevenir el daño.

''Manresa en sus Comentarios al Código Civil, al hablar de la responsabilidad que imponen estas disposiciones, se expresa así:

''  'Que dicha responsabilidad cesa cuando las personas a quienes la impone el art. 1903, . . .' 12 Manresa, 611.

''Aparece de lo anterior que el dueño o director de un establecimiento o empresa es responsable por el daño causado por la negli-

gencia de su empleado que actúa en el curso de su empleo, a menos que pruebe como defensa afirmativa que tuvo el cuidado y vigilancia de un buen padre de familia para evitar el daño, y que esto es así sea o nó la persona perjudicada un empleado ocupado en la misma empresa; también que el deber del dueño o director no termina por el hecho de haber ejercitado la diligencia de un buen padre de familia al seleccionar sus empleados; que debe hacer más y mostrar que ejercitó la debida diligencia inspeccionando el trabajo del establecimiento o empresa en el cual sus empleados están ocupados. Este parece ser el criterio sustentado por la Corte Suprema de los Estados Unidos en Panamá Railroad Co. v. Toppin, 252 U. S. 308, 40 Sup. Ct. 319, 64 L. Ed. —, resuelto en marzo 15, 1920.

"En ese caso la corte estaba interpretando el artículo 2347 del Código Civil de Panamá y el artículo 5 de la ley de Panamá No. 62 de 1887, el cual contiene disposiciones semejantes a las de los artículos 1803 y 1804 del Código Civil de Puerto Rico. El artículo 2347 de ese Código prescribía lo siguiente:

" 'Toda persona es responsable no sólo por sus propios actos, a los fines de indemnizar el daño, sino por el acto de aquellos que pueden estar bajo su cuidado.

" 'De modo que el padre, y en su defecto la madre, es responsable por los actos del hijo menor que vive en su misma casa.

" 'De modo que el tutor o guardián es responsable por la conducta del pupilo que vive bajo su protección y cuidado.

" 'Así pues el marido es responsable por la conducta de su esposa.

" 'También los directores de colegios y escuelas responden por los actos de los estudiantes mientras están bajo su cuidado, y los artistas y empresarios por los actos de sus aprendices y dependientes en casos semejantes.

" 'Pero esta responsabilidad cesará si con el ejercicio de la autoridad y cuidado que sus respectivos caracteres prescriben en cuanto a ello y le confieren, no pudieron impedir el acto.'

"El artículo 5 de la ley de Panamá No. 62 de 1887 disponía:

" 'Las compañías de ferrocarriles son responsables por los daños y lesiones causados a personas y propiedades por razón del servicio de dichos ferrocarriles y que se imputan a la falta de cuidado, abandono o violación de los respectivos reglamentos de policía que se expedirán por el gobierno tan pronto sea promulgada la ley.'

"En ese caso un maquinista de la compañía de ferrocarriles de Panamá, mientras conducía una locomotora en la ciudad de Colón a una velocidad mayor que la permitida por los reglamentos de po-

licía de Panamá, arrolló al demandante mientras iba éste en su caballo, y toda vez que la compañía de ferrocarriles había usado el debido cuidado en la selección de su maquinista, una de sus contenciones fué que no podía ser hecha responsable bajo la ley de Panamá por el daño causado por la negligencia del maquinista. En contestación a esta alegación, el Juez Asociado Sr. Brandeis, al emitir la opinión de la corte, se expresó así:

" 'Esta contención fué hecha y rechazada por la Suprema Corte de Colombia en un caso semejante al presente. Cancino v. Railroad of the North, resuelto en diciembre 16, 1897, XIII Gaceta Judicial, números 652, 653. Se estableció allí una demanda contra el empresario de un tranvía para recobrar daños por la pérdida de una casa por fuego debido al manejo negligente de una locomotora. La corte basó la responsabilidad en el artículo 2347 del Código Civil, que declara que toda duda en cuanto a la existencia de la dependencia necesaria quedó disipada por el artículo 5 de la ley 62 de 1887, el cual "sin mencionar en forma alguna los dependientes, empleados o trabajadores de las empresas de ferrocarril, hace responsable a sus empresarios por los daños y perjuicios que puedan causar a las personas o a la propiedad debido al servicio de dichos caminos." La corte continúa: "Y no existe en los autos ninguna prueba de que ningún cuidado o precaución, ya por parte del empresario o del maquinista, se tuvo o tomó para impedir el fuego, la prueba de que el empresario por su parte había ejercitado mucho cuidado en la selección de sus empleados no era suficiente a juicio de la corte, porque la diligencia y cuidado de que aquí se trata es aquella que debió haber sido ejercitada para impedir un daño que pudo fácilmente haber sido previsto." Este caso parece revocar en efecto la autoridad principal a la cual nos ha hecho referencia el demandante en error—y en realidad no es improbable que tal fuera el objeto del artículo 5 de la ley 62 de 1887!' "

[2] (b) La apelante alega que no se desprende de la demanda deber alguno que ella tuviera para la protección del demandante y que no se alega su incumplimiento para hacerla responsable. Basta contestar que la demanda especifica todas las circunstancias que concurrieron al accidente y éstas contienen suficientemente las alegaciones de cuya omisión se queja la apelante.

[3] (c) El motivo de que tampoco se alega que el agente estuviera autorizado por su principal para emplear a otras

personas en el traslado de los aparatos "archivos de crédito" es otra circunstancia que está contenida implícitamente en las alegaciones.    El agente de la demandada se ocupaba en la venta de aparatos de la demandada y eso exigía el traslado de los mismos.    Su peso, que excedía de más de 125 libras, requería la ayuda de otras personas para su remoción y parecía lo más lógico que en el curso ordinario de su empleo tal autorización se considerase inherente a su agencia para requerir la cooperación y esfuerzo de otras personas para realizar el fin del negocio.

[4] (*d*) Por este motivo se sustenta la teoría de que si Casals era un empleado de la demandada, al emplear a su vez al demandante éste se convirtió en. un co-empleado (*fellow servant*) y asumió el riesgo del empleo.    Esta es otra cuestión que no es nueva.    Esta corte y la de Circuito de Apelaciones, Primer Circuito, tienen resuelto que dicha teoría no es aplicable en Puerto Rico.

En el caso de *Correa* v. *The Fajardo Sugar Co.*, 29 D.P.R. 341, esta Corte Suprema dijo:

"Aunque generalmente las cortes federales parecen inclinarse a resolver que la doctrina de *res ipsa loquitur* no es aplicable a una .acción por daños establecida por un empleado contra su patrono, la regla así establecida en las jurisdicciones en que rige el derecho civil donde la doctrina de co-empleados es desconocida y donde la máxima en cuestión está en completa armonía con los principios en que descansa el Código Civil."

Y la Corte de Circuito de Apelaciones, Primer Circuito, en el caso de *Arzuaga, supra,* dijo asimismo:

"La regla del co-empleado no prevalece en Puerto Rico; la defensa del buen padre contenida en el artículo 1804 del código es la regla que allí rige."

(*e*) Finalmente se ataca la suficiencia de la demanda arguyendo que si es cierto que Casals era un empleado de la demandada y el demandante su co-empleado, se debió alegar que dicho demandante había renunciado a los beneficios de

la ley sobre indemnizaciones a obreros por accidentes del trabajo. Alegadas en la demanda las circunstancias en que aparece prestando el demandante sus servicios al agente de la demandada y dentro de las cuales tuvo lugar el accidente, no puede deducirse como cuestión legal que el demandante podía invocar la protección de la ley sobre indemnizaciones a obreros por accidentes del trabajo, y siendo ello así menos podía renunciar a sus beneficios.

[5] II. El segundo error se refiere a que la corte inferior abusó de su discreción al denegar la suspensión del juicio. La moción se fundó en la no comparecencia de dos testigos que eran policías insulares y uno de ellos se encontraba enfermo. De ellos se acompañaban dos *affidavits* conteniendo sus declaraciones. De éstas aparece que la prueba era de carácter acumulativo y no se explicó la incomparecencia del testigo que estaba en condiciones de comparecer. Además, el juicio que empezó el 31 de marzo, 1923, fué suspendido sin embargo para continuarlo el 19 de mayo, quedando el demandado en condiciones de continuar con su prueba pues solamente se había practicado parte de la misma. La actuación, por tanto, de la corte fué correcta.

[6] III. En este número se sostiene que la corte inferior debió declarar con lugar la prescripción de la acción que aparece de la faz de la demanda enmendada de mayo 9, 1922. La resolución de la corte en ese respecto, en parte, dice:

"Aparece de los autos que la demanda original fué radicada en Julio 10 de 1920 o sea a los tres meses y días después del suceso, compareciendo la demandada mediante excepción previa en agosto 31 de 1920. La demanda enmendada no cambia ni aduce una nueva causa de acción. En ella solamente se amplía la demanda original, consignándose más detallada y específicamente los hechos que integran la acción que ejercita el demandante. Aparece también de la demanda y de la prueba aportada que el demandante es menor de edad por lo que la corte entiende que el demandante tiene un término hasta seis meses después de haber llegado a la mayoría de edad para ejercitar su acción. (Pérez v. Guánica Central, 17 D.P.R. 963.—Art. 40 Cód. de Enj. Civil.)"

Se puede aducir además que no cambiando la demanda enmendada la causa de acción, no existe solución de continuidad entre ella y la original y sus efectos se retrotraen a la fecha de la radicación de la demanda original.

"La regla general es que una enmienda a una demanda que no establece una nueva causa de acción sino meramente amplía y da mayor precisión a las alegaciones en apoyo de la causa originalmente establecida, o expresa nuevos fundamentos o especificaciones afines a tales imputaciones o alegaciones, se retrotrae al comienzo de la acción y puede ser sostenida sin consideración al estatuto de prescripción." 17 R.C.L. 821.

IV. La apelante señala como error la conclusión de la corte inferior que declara que José Casals Valdés al tiempo de ocurrir el accidente era agente de la demandada y a la apreciación que de la prueba hizo el juez inferior. La prueba en conjunto sostiene ese extremo. Las reglas generales que gobiernan estos casos no admiten discusión. *Singer Manufacturing Co.* v. *Rahn,* 132 U.S. 522. La única controversia es su aplicación a las relaciones existentes entre la apelante y Casals. El gerente general de la apelante declaró que Casals representaba a la corporación y se le había asignado el distrito oeste de la isla que tenía bajo su control y administración; vendía los aparatos y recibía una comisión por cada operación. La corte inferior estuvo justificada en sostener, por tanto, que Casals era un agente o empleado de la apelante. Véanse también los casos de *Lewis* v. *National Cash Reg. Co.,* 84 N.Y.L. 598, 87 Atl. 345; *Williams* v. *Nat. Cash Reg. Co.,* 157 Ky. 836, 164 S.W. 112, y *Nat. Cash Reg. Co.* v. *Williams,* 171 S.W. 162, 161 Ky. 550.

No hay duda de que la apelante fué responsable de la negligencia de Casals que actuaba en el curso ordinario de su empleo. No se dió a conocer por la demandada ningún hecho específico que demostrara la diligencia de un buen padre de familia para evitar el daño. Por el contrario, la evidencia indica que no se tuvo en cuenta el consejo de la

ley.   Coincidía que se trataba de un menor de 14 años y no obstante Casals utilizó sus servicios para ayudarle a transportar un peso de más de 125 libras.   Aunque se insiste que el demandante fué un intruso, la corte inferior llegó a la conclusión de que el demandante fué requerido mediante pago para emplear sus servicios y que el accidente ocurrió en la forma que alegó el demandante.   De todos modos, la cuestión relativa a si el demandante era o no un intruso no hace diferencia.   La responsabilidad de la apelante era igual siendo o no el demandante un empleado ocupado en la misma empresa.   *Arzuaga, supra,* p. 454.

V. Se discute como error haberse fijado la cuantía de los daños en $1,000.

El demandante fué curado de primera intención por el Dr. Guzmán Rodríguez y luego continuó bajo su tratamiento. El perito médico describe la lesión, el tratamiento a que fué sometido el paciente por 4 ó 5 meses y sus probables consecuencias.

Refiere el Dr. Guzmán, en síntesis, que durante los primeros diez días se le presentó una infección al demandante que le pudo producir la muerte, que fué objeto por esa razón de una intervención quirúrgica; que las curas a que fué sometido eran muy dolorosas; que debido al carácter permanente de la herida, el músculo ha perdido como media pulgada de su poder extensivo para estirar la pierna y que eso sólo puede corregirse mediante otra operación y que durante 4 ó 5 meses después de salir el paciente del hospital le vió que cojeaba quejándose de que el pie le dolía, diciendo el testigo eso era debido al tejido cicatrizal que producía el encogimiento de la pierna.

La ocupación del demandante, por otra parte, al tiempo de ocurrir el accidente, era la de limpiabotas.   Declaró que ganaba 50 centavos diarios y había días que alcanzaba a $2. Si tenemos en cuenta las curaciones dolorosas a que fué sometido el demandante durante cuatro o cinco meses y los

probables efectos de la lesión, especialmente en relación a su aptitud para el trabajo, la cantidad de $1,000 fijada por la corte está justificada. Es cierto que las declaraciones del Dr. Guzmán Rodríguez fueron contradichas por el Dr. T. Ramírez Cuerda refiriéndose principalmente a las consecuencias de la herida en relación con el trabajo a que puede dedicarse el demandante, pero la corte inferior tomando en conjunto todas las circunstancias concurrentes determinó como justa dicha suma de $1,000.

Los restantes errores sólo se discuten someramente. La falta de citas de autoridades y de una argumentación más convincente, nos exime de su discusión.

*Por todo lo expuesto, debe confirmarse la sentencia apelada.*