Pesante Martínez, Juez Ponente
*1031 TEXTO COMPLETO DE LA SENTENCIA
La parte apelante, Lillian Sullivan junto a Carlos Torres y la Sociedad Legal de Gananciales por ellos compuesta, en representación de su hijo menor de edad, Carlos A. Torres Sullivan, y las aseguradoras A y B y las Corporaciones X y Z procuran la revocación de una sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Guayama, (en adelante, “TPF) de 20 de febrero de 2004. Mediante la misma, dicho foro declaró ha lugar la acción de daños y perjuicios instada por la parte apelada “por la negligencia desplegada por la parte demandada”. En su consecuencia, se condenó a la parte apelante al pago por la cantidad de $75,000 por concepto de daños y angustias mentales sufridos tanto por las menores de edad como por sus padres y la cantidad de $3,000 por concepto de pérdidas causadas al vehículo de motor.
Por los hechos pertinentes, con el beneficio de la comparecencia de ambas partes y los fundamentos que expondremos a continuación, procede modificar la sentencia enmendada que nos ocupa a los fines de reducir de $10,000 a $5,000 la cantidad concedida por concepto de angustias mentales y daños físicos ocasionados a la menor de edad Omayra Janice Sierra López y eximir a la parte apelada de satisfacer a la sociedad legal de gananciales la cantidad de $3,000 por concepto de pérdidas causadas a su vehículo de motor.
Los hechos pertinentes para atender estos planteamientos, surgen de las determinaciones de hecho de la sentencia apelada, que fueron cuestionadas por las partes y que reproducimos a continuación.
El 24 de noviembre de 1997, a eso de las 7:00 p.m., el apelado Adalberto Sierra Rivera transitaba en un vehículo de motor marca Toyota, modelo Tercel de 1997, tablilla CUX-350, en compañía de su esposa, la apelada Omayra López Rivera y sus dos hijas menores de edad, Omayra Janice y Lizbeth, por la Carretera #743 del Municipio de Cayey. Dicho vehículo pertenecía a la sociedad legal de gananciales compuesta por ambos.
En ese mismo momento, el apelante Carlos A. Torres, de 17 años de edad, conducía un vehículo de motor marca Mitsubishi Mirage de 1997, tablilla CVA-395 perteneciente a la sociedad de gananciales compuesta por los apelantes, Lillian Sullivan y su esposo José Ángel Ortiz Torres. Según contenido en el Informe de Accidente de Tránsito de la Policía de Puerto Rico, mientras manejaba a la altura de la fábrica de Coca Cola, el joven Torres Sullivan perdió el control de su vehículo dado a la alegada combinación de exceso de velocidad y asfalto mojado, invadiendo el carril por donde transitaba el vehículo manejado por los apelados e impactándolo por su parte frontal. Del expediente no se desprende objeción alguna a dicho informe policiaco detallando las incidencias del accidente.
Tanto las menores como su mamá, la señora López Rivera, fueron trasladadas a la sala de emergencias del Hospital Menonita del Municipio de Cayey, para recibir primeros auxilios, mientras el padre de las menores permaneció en el lugar del accidente en espera de la policía.
Como consecuencia del accidente, la menor de edad Lizbeth, de dos años, fue trasladada al Centro Médico de Río Piedras, donde permaneció en el Hospital Pediátrico por 26 días debido a una fractura del fémur izquierdo. Dicha fractura obligó a la menor a llevar puesto un yeso que la cubría desde el torso hasta sus piemitas y la inmovilizaba casi en su totalidad, provocándole molestias, dolor e incomodidad. Durante el *1032 transcurso de su hospitalización, la niña sufría dolor constante, necesitando asistencia en todo momento, por lo que su madre, a pesar de tener su rodilla enyesada como consecuencia del mismo accidente, la tuvo que asistir en todo momento.
Por su parte, la madre sufrió de lesiones en las piernas y rodillas, por lo que le enyesaron una de las piernas, lo cual contribuyó a obstaculizar sus actividades y obligaciones, impidiéndole, a modo de ejemplo, atender a su hija Janice de seis años de edad, entre otras limitaciones sufridas. Esta última permaneció en la casa bajo el cuido de su padre, mientras se recuperaba de varios golpes y lesiones en su codo y rodilla derecha. El padre, por su parte, sufrió hematomas en el dedo meñique de su mano izquierda. La desarticulación forzosa del núcleo familiar y las propias lesiones sufridas en el accidente, causaron en la menor sufrimientos y angustias por no poder compartir como de costumbre con su madre y su hermanita.
Como consecuencia del accidente, los padres de las menores de edad albergaron duda, incertidumbre y angustia sobre la posibilidad de que sus hijas nunca pudiesen recuperar completamente la condición física que gozaban con anterioridad al accidente.
Conforme a ello, el 2 de septiembre de 1998, la parte apelada presentó ante el TPI una acción de daños y perjuicios alegadamente causados por el accidente vehicular de referencia. Como resultado del accidente, la sociedad legal de gananciales formada por Sierra Rivera y López Rivera alegó haber perdido el automóvil en que viajaban que sufrió un impacto frontal y, aunque no sometieron estimado alguno de valor, aceptaron que recibieron $800 de indemnización a través de una compañía de seguros.
Luego de finalizado el descubrimiento de prueba, el TPI señaló la celebración del juicio en su fondo para el 8 de agosto de 2003. Según de desprende del expediente, al comienzo de la vista, la parte demandada estipuló cómo había ocurrido el accidente y aceptó la negligencia, por lo que la vista versó sobre la cuantía de los daños.
En dicha vista prestaron testimonio por la parte apelada Sierra Rivera y su esposa López Rivera, quienes ofrecieron detalles sobre la forma y manera en que ocurrió el accidente. Además, prestó testimonio pericial el Dr. Fausto Boria, Fisiatra, quien interpretó la Evaluación Médica Independiente de 24 de agosto de 2001 realizada a la niña Lizbeth, quien sufrió lesión en su fémur izquierdo. Refiere dicho informe que la menor de edad fue sometida al tratamiento conocido como tracción esquelética mediante una grapa (“pin”) que se le colocó en dicha pierna por 21 días. En su consecuencia, a la menor le fue aplicado un yeso el cual le inmovilizaba la pelvis, los muslos y la pierna afectada hasta el tobillo mediante una varilla o “spied' para evitar la dislocación de la cadera. Este procedimiento mantuvo inmóvil a la menor por todo un mes, impidiéndole que llevase a cabo tareas y actividades típicas de su edad como correr, brincar, caminar y jugar normalmente con sus pares.
Con posterioridad a la hospitalización, la niña tuvo que someterse a terapia física de rehabilitación por varios días, prolongándose la misma por un mes. El informe determinó un impedimento de 7% en su persona de manera permanente, con padecimiento de dolor persistente en dicha pierna. Además, de los resultados de un escanograma efectuado en las extremidades inferiores de la menor de edad el 19 de agosto de 2001, se detectó discrepancia en el largo de sus piernas de casi 2 centímetros, producto también del accidente que hoy nos ocupa.
Según acota la parte apelada y determinó como cuestión de hecho el TPI, Lizbeth presenta dificultad al caminar y al correr, impedimento suficiente para cambiar una vida normal. Esto, a su vez, le provocó tristeza, sufrimientos y angustias mentales tanto a ella como a su hermana y a sus padres al verle en ese estado físico y emocional.
*1033 El 20 de febrero de 2004, el TPI declaró ha lugar la acción de daños y perjuicios instada en contra de la parte apelante y condenó a éstos al pago de las siguientes cantidades:

“1. $15,000por los daños físicos y angustias mentales de la codemandante Omayra López Rivera;

2. $10,000 por los daños físicos y angustias mentales ocasionados a Adalberto Sierra López;

3. $10,000 por las angustias mentales y daños físicos ocasionados a la menor Omayra Janice Sierra López;

4. $40,000 a la menor Lizbeth Sierra López por sus daños físicos y angustias mentales;

5. $3,000 a la sociedad legal de gananciales compuesta por lo demandantes Adalberto Sierra Rivera y Omayra López Rivera, por las pérdidas causadas al vehículo de motor. ”

Inconformes con dicho dictamen, los apelantes recurren ante esta Curia imputando la comisión de los siguientes errores por parte del TPI:

“Erró el [TPI] y abusó de su discreción al concluir sin prueba alguna de récord, que la niña Lizbeth Sierra López a causa del accidente resultó con un impedimento permanente de un 7% en su persona el cual sería igual a través de toda su vida.

Erró el [TPI] y abusó de si discreción al concluir que toda la culpa y, por tanto, la responsabilidad por el resarcimiento de los daños corresponde al conductor del vehículo envuelto (sic) en el accidente sin ninguna imprudencia o conducta contributiva de parte de los demandantes.

Erró el [TPI] y abusó de su discreción al concluir que la sociedad legal de gananciales formada entre Doña Lillian Sullivan y Don José A. Ortiz Torres responde por los daños causados por Carlos A. Torres Sullivan, el hijo de la primera.

Erró el [TPI] y abusó de su discreción al evaluar los daños y fijar cuantías a ser resarcidas.

Erró el [TPI] y abusó de su discreción al declarar sin lugar la Moción de Reconsideración y negarse a captar que la niña objeto de la compensación en resarcimiento de los daños causados estaba fingiendo cuando fue observada por el Honorable Juez que presidió el proceso. ”

Con el beneficio de una exposición narrativa de la prueba, los alegatos de las partes y de la totalidad del expediente ante nuestra consideración estamos en condición de resolver el recurso de epígrafe.
III
De suerte que podamos resolver los errores primero al tercero, por estar estrechamente vinculados, precisa evaluar como cuestión de umbral la apreciación de la prueba efectuada por el TPI y la adjudicación de credibilidad que a bien hiciera dicho foro judicial al momento de emitir el dictamen apelado, (en lo referente a los daños ya que la negligencia fue aceptada). Dicho ejercicio nos ayudará a determinar si le asiste o no la razón a la parte apelada en cuanto a imputar abuso de discreción por parte del TPI al concluir que los apelantes responden, en su totalidad, por el resarcimiento de los daños ocasionados como consecuencia del accidente.
Como corolario a canalizar adecuadamente la controversia señalada, y en respuesta al cuarto y quinto señalamiento de error, debemos dirimir la procedencia de la valorización de los daños efectuada por el TPI. Una vez efectuado dicho ejercicio, habremos de examinar si las cuantías adjudicadas son adecuadas a las que le corresponde a los apelantes satisfacer por concepto de compensación en cuanto a los daños y perjuicios *1034 ocasionados a la parte apelada.
IV
A. La apreciación de la prueba y la adjudicación de credibilidad testiñcal.
Es norma claramente establecida por el Tribunal Supremo de Puerto Rico que en ausencia de error manifiesto, pasión, prejuicio o parcialidad no se intervendrá a nivel apelativo con las determinaciones de hecho y adjudicación de credibilidad hecha en instancia por el juzgador de los hechos. Trinidad García v. Chade, opinión de 18 de enero de 2001, 2001 J.T.S. 10 a la pág. 793; Colón y otros v. K-Marty otros, opinión de 26 de junio de 2001, 2001 J.T.S. 98 a la pág. 1484; Municipio de Ponce v. Autoridad de Carreteras, opinión de 29 de diciembre de 2000, 2001 J.T.S. 3 a la pág. 658; Monllor Arzola v. Soc. Legal de Gananciales, 138 D.P.R. 600 (1995).
Más aún, dispone la Regla 43.2 de las de Procedimiento Civil de Puerto Rico, 32 L.P.R.A., Ap. III, en lo pertinente, que “fijas determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos ”.
Un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia. Argüello v. Argüello, supra. La determinación de credibilidad del tribunal sentenciador es merecedora de gran deferencia por parte del tribunal apelativo por cuanto es ése juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada ya que él fue quien oyó y vio declarar a los testigos. Id.; Pueblo v. Bonilla Romero, 120 D.P.R. 92 (1987).
Más aún, el juez ante quien deponen los testigos es quien tiene la oportunidad de verlos y observar su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, en fin, el comportamiento general mientras declara, factores que van formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad. Argüello v. Argüello, supra. “[L]a declaración de un testigo no contradicho sobre un hecho determinado, debe merecer crédito, a no ser que su versión sea físicamente imposible, inverosímil o que por su conducta en la silla testifical se haga indigno de crédito”. Miranda Soto v. Mena Eró, 109 D.P.R. 473 (1980) (Citas omitidas).
Aunque de ordinario el foro apelativo no interviene con la apreciación de la prueba que hacen los foros judiciales de instancia, sí lo hace cuando un balance racional, justiciero y jurídico de la totalidad de la prueba y de los documentos que obran en autos lleva a conclusiones distintas a las del tribunal de instancia. Negrón Rivera y Bonilla, Ex Parte, 120 D.P.R. 61 (1987).
Un tribunal apelativo no puede dejar sin efecto una sentencia cuyas conclusiones encuentran apoyo en la prueba desfilada. Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985); Pérez v. Hosp. La Concepción, 115 D.P.R. 721, 728 (1984). No obstante, está claro que el arbitrio del juzgador de hechos es respetable, más no absoluto. Por eso, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo. Véase, Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8 (1987).
No obstante, en el ejercicio de su facultad revisora, el foro apelativo se encuentra en igual posición que el foro de primera instancia en cuanto a evaluar la prueba pericial y documental ofrecida. Es por ello que, en lo que respecta a dicha evidencia, está facultado a adoptar su propio criterio en la evaluación de la misma. En cuanto a la prueba pericial, el Tribunal Supremo ha expresado que como foro apelativo, no estamos obligados a *1035 seguir indefectiblemente “la opinion, juicio, conclusion o determinación de un perito o facultativo...y que todo tribunal está en plena libertad de adoptar su criterio propio en la apreciación y evaluación de la prueba!'. Culebra Enterprises Corp. v. E.L.A., 143 D.P.R. 935 (1997), citando a Prieto v. Maryland Casualty Co., 98 D.P.R. 594 (1970) (otras citas omitidas); Véase, además, Dye-Tex Puerto Rico, Inc. v. Royal Insurance Company of Puerto Rico, 150 D.P.R. 658, 662-663 (2000).
En armonía con lo precedentemente expuesto, nos corresponde determinar si los actos u omisiones de la parte apelante ocasionaron el daño alegado y, por su culpa, están obligados a reparar el daño causado. Además, es menester dirimir la adecuacidad de la concesión de daños morales ocasionados y si corresponde o no la reducción de las cantidades según concedidas.
B. Los daños morales y la valorización de los mismos
Luego de hacer la determinación de que efectivamente se sufrió daños, y que éstos fueron causados por la negligencia admitida por el joven Torres Sullivan, procede hacer la clasificación correspondiente de los daños y apreciar el valor de los mismos.
En García Pagán v. Shiley Caribbean, 122 D.P.R. 193 (1988), se consignó lo siguiente:
“En la esfera local nuestra jurisprudencia no distingue entre daños físicos, materiales o morales para efectos de resarcimiento... Daño es todo aquel menoscabo material o moral que sufre una persona, ya en sus bienes vitales naturales, ya en su propiedad o en su patrimonio, causado en contravención a una norma jurídica, y por el cual ha de responder otra. ...La responsabilidad civil es precisamente el deber de resarcir al damnificado, otorgándole un valor económico al daño sufrido... El resarcimiento o indemnización pecuniaria consiste en atribuir al perjudicado la cantidad de dinero suficiente para compensar su interés perjudicado. Es como una subrogación real en que el dinero ocupará el lugar de los daños y perjuicios sufridos. Es una atribución pecuniaria que crea una situación patrimonial que equivale a la destruida por el daño causado.” (Enfasis del Tribunal).
Véase, además, Carlos J. Irizarry Yunqué, Responsabilidad Civil Extracontractual, ob. cit., supra.
Los daños se clasifican en generales y especiales. Son daños generales aquellos para cuya evaluación hay que recurrir a la sana discreción del tribunal. Ejemplo de ello son las lesiones físicas, el dolor, las incapacidades como resultado de dichas lesiones, las angustias mentales, el daño a la reputación y demás. Estos dos últimos también se les clasifica como daños morales. íd.
En materia de resarcimiento del daño antijurídico, el sistema de responsabilidad civil contempla que se resarza el mismo, de manera que se coloque a la víctima del daño en la situación que estaba antes de ocurrir éste. Por eso es que el remedio de la restauración in natura o restitutio in integrum se considera como la forma ideal de resarcir el daño. Rodríguez Cancel v. A.E.E., 116 D.P.R. 443 (1985); H.A. Fischer, Los Daños Civiles y su Reparación, Madrid, Biblioteca de la Revista de Derecho Privado, 1928, a las págs. 133-134. Pero la mayoría de las veces el daño tiene un carácter irreversible. En tales casos, se recurre a la reparación monetaria para resarcir el daño pecuniario y compensar el daño moral. Galib Frangie v. El Vocero de P.R., 138 D.P.R. 560 (1995).
El equivalente monetario del daño se fija tratando de llegar a una ecuación entre la extensión y la severidad de éste y la cantidad monetaria. Aunque ésta es una tarea sumamente difícil, si no imposible, intentamos aproximamos a la equivalencia en ánimo de hacer valer el imperativo moral que prohíbe causar daño a un tercero mediante actos ilegítimos o cuando el perjuicio puede ser evitado y cuando se causa daño de esa manera debe ser reparado. Santini Rivera v. Serv. Air, Inc., 137 D.P.R. 1 (1994); A. de Cupis, El Daño, 2da. ed., *1036 Barcelona, Ed. Bosch, 1975, alapág. 19.
El daño moral, es por exclusión el menoscabo no patrimonial, es el daño que no recae directamente sobre el patrimonio de una persona o que cayendo sobre bienes objetivos, causa una perturbación emocional en su titular, cualquiera que fuera el derecho que sobre ello se ostente. El daño moral es, pues, daño espiritual, daño inferido en derechos de la estricta personalidad, o en valores que pertenecen más al campo de las emociones que de la realidad material o económica. Es la lesión ocasionada en los bienes no económicos de una persona, o el efecto de ese daño material sobre el estado anímico de la persona. Cintrón Adorno v. Gómez, 147 D.P.R. 576 (1999).
Dicho daño moral, igualmente, agrupa varios elementos o partidas de daños diferentes. Como señala el Tribunal Supremo acogiendo lo expresado por A. de Cupis en El Daño, op. cit., a la pág. 123, “si se quiere dar de los daños no patrimoniales una noción lógica y completa, no puede limitarse al campo de los sufrimientos físicos o morales, sin concebirlo deforma que puedan integrarse todos los daños que no se comprenden en el otro grupo, en el de los daños patrimoniales, con otras palabras, que su noción no puede ser en el momento actual más que meramente negativa”.
Se ha reconocido y valorado como partidas independientes integrantes del daño moral las angustias físicas y las mentales. Las angustias físicas se han definido como la respuesta fisiológica de la persona a un daño corporal. Las mismas han sido consideradas desde el principio como una partida independiente separada y distinta de daño moral. Zalduondo v. Sánchez, 15 D.P.R. 231 (1909); Filardi v. Barrera, 24 D.P.R. 391 (1911); Rodríguez v. National Cash Registrer, 35 D.P.R. 663 (1926); Font v. Viking Construction, Corp., 58 D.P.R. 689 (1941); Ruiz Santiago v. E.L.A., 116 D.P.R. 306 (1985).
Por su parte, en el caso de las angustias mentales, persiste la tendencia de agrupar, para propósitos de compensación, las angustias físicas con las mentales. Rodríguez Cancel v. A.E.E., 116 D.P.R. 443 (1985); Riley v. Rodríguez Pacheco, 119 D.P.R. 762 (1987). Sin embargo, se ha señalado como distinción el hecho de que el dolor físico ubica en el sitio de nuestro cuerpo de donde ha ocurrido la lesión. Mientras, la segunda partida de daños, las angustias mentales, se ubican en nuestro cerebro y en nuestro sistema emocional-afectivo. Cintrón Adorno v. Gómez, supra.
En su consecuencia, no cabe duda de que los sufrimientos y sensaciones íntimas de dolor, temor, tristeza, ansiedad, humillación y pérdida de paz, por mencionar algunas, son compensables en nuestro ordenamiento jurídico siempre que concurran en la acción los requisitos del Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 5141.
Ahora bien, sólo procede la compensación por daños morales cuando el demandante pruebe cómo dichos daños han afectado la salud, el bienestar y la felicidad del damnificado. Es imprescindible probar sufrimientos y angustias morales profundas y no bastaría una pena pasajera como base para la acción. Ramos Rivera v. E.L.A., 90 D.P.R. 828 (1964).
La necesidad de indemnizar por daños en nuestro ordenamiento no es ad infinitum. Debemos de recordar que nuestra sociedad refleja un apetito voraz hacia lo material, y no podemos convertir el dolor, el sufrimiento, la tristeza, el desamparo y la frustración, en simplemente otro bien de consumo y tráfico comercial. La indemnización por daños tiene que corresponder a la prueba; no es una industria forense. Ruiz Guardiola v. Sears Roebuck, 100 D.P.R. 817 (1972); Masa v. A.F.F., 96 D.P.R. 856 (1969). Para indemnizar un daño, hay que realmente sufrirlo y probarlo. First Bank of P.R. v. Inmob. Nac., Inc., 144 D.P.R. 901 (1998).
No obstante, el derecho a ser compensado por daños no puede derrotarse meramente por el carácter especulativo que en alguna medida supone el cómputo de daños. Agosto Vázquez v. F.W. Woolworth & Co., *1037 143 D.P.R. 76 (1997). Ciertamente, la estimación de los daños no es una tarea fácil. El juzgador tiene el deber de evaluar la prueba y otorgar una justa compensación basada en la misma y evitar de esta manera que se desvirtúe el propósito del Art. 1802 del Código Civil, 31 L.P.R.A. see. 5141, para indemnizar un daño dándole un aspecto punitivo a la norma.
La gestión judicial de estimación y valorización de los daños es pues una difícil y angustiosa labor, al no existir un sistema mecánico que nos permita llegar a un resultado exacto en relación con el cual todas las partes queden satisfechas y complacidas. Nieves Cruz v. U.P.R., opinión de 31 de mayo de 2000, 2000 J.T.S. 91; Blás v. Hosp. Guadalupe, supra; Rodríguez Cancel v. A.E.E, supra. No hay duda, pues, que los tribunales de instancia, de ordinario, están en mejor posición que los tribunales apelativos para evaluar la situación por cuanto son los que tienen contacto directo con la pmeba que a esos efectos presenta la parte que los reclama. Publio Díaz v. E.L.A., 106 D.P.R. 854 (1978). Ahí la razón para la norma de abstención judicial; esto es, de que este Tribunal no intervendrá con la decisión que a ese respecto emitan los tribunales de instancia a menos que las cuantías concedidas sean ridiculamente bajas o exageradamente altas, y de que la parte que ante este Tribunal solicita la modificación de las sumas concedidas a nivel de instancia viene obligada a demostrar la existencia de las circunstancias que hacen meritorio el que se modifiquen las mismas. Canales Velázquez v. Rosario Quiles, 107 D.P.R. 757 (1978); Rodríguez Cancel v. A.E.E., supra.
V
En su escrito, la parte apelante alega que incidió el TPI al evaluar los daños y fijar las cuantías a ser resarcidas. Además, los apelantes imputan abuso de discreción por parte del TPI al declarar sin lugar la moción de reconsideración por ellos presentada e indicar que la compensación otorgada a Lizbeth no procedía por sugerir que la menor fingía su dolama cuando fue observada por el juez de instancia que presidió el proceso.
Surge de la totalidad de la pmeba, de manera meridiana, el alcance de los daños a consecuencia de la negligencia admitida del joven Torres Sullivan que expuso a los apelados a sufrimientos innecesarios y a poner sus vidas en riesgo. Para ello, el tribunal debió procurar la asistencia de la pmeba pericial, quien, por sus conocimientos pudo ilustrar sobre el tratamiento y cuidado razonable de acuerdo a los últimos métodos y procedimientos de la medicina moderna. Entendemos que, en su apreciación, el tribunal confirió la correspondiente credibilidad al testimonio pericial del Dr. Boria y de los propios perjudicados y que no existe pmeba en los autos de parcialidad alguna.
Si el tribunal de instancia confirió razón al testimonio vertido por el perito de la apelada, y lo cual obviamente perjudica la posición de la otra parte, no conlleva sin más que haya parcialidad en la apreciación de la pmeba. Todo lo contrario, el juzgador está haciendo pleno ejercicio de su facultad adjudicadora. Más aún, dicha pmeba desfilada, en apoyo a las alegaciones de la Demanda, en lo referente a la justificación de los daños, fue una clara y consistente, nunca siendo contradicha por la parte apelante, quien no presentó pmeba documental ni pericial alguna para refutar los testimonios vertidos. Siendo esto así, no incidió el TPI en los primeros tres errores señalados.
Sin duda alguna, a estas alturas del procedimiento, la parte apelante no puede sujetar responsabilidad o negligencia contributoria alguna a los apelados por los daños ocasionados a éstos. Esto responde a la aceptación expresa, por parte de Torres Sullivan de la responsabilidad total de la negligencia alegada no sólo al principio de la vista en su fondo celebrada el 8 de agosto de 2003, sino tal hecho quedó recogido tanto en la Exposición Narrativa de la Pmeba como en su escrito de Apelación. Nos vemos, pues, obligados a adscribimos a la esencia del significado del aforismo: “ante la admisión de parte, relevo de prueba”. Pueblo v. Rexach Benítez, 130 D.P.R. 273, 342 (1992) (Opinión disidente); González Muñiz, Ex parte, 128 D.P.R. 565, 569 (1991).
Por otra parte, lo anterior encuentra sustento en el informe de la policía presentado, el cual no fue contravenido por las partes por lo que su contenido fue igualmente aceptado, es decir, la negligencia para causar *1038 los daños morales argüidos se debe en su totalidad al craso menosprecio desplegado por Torres Sullivan en el manejo del vehículo que impactó el de los aquí apelados.
En cuanto al tercer error reseñado, esto es, concluir que la sociedad legal de gananciales compuesta por la madre del principal responsable de los hechos (Torres Sullivan) y el esposo de ésta, Ortiz Sullivan, responde por los daños causados por el entonces menor de edad, repasemos lo siguiente. Alega la parte apelante que, con relación a la comisión del alegado error mencionado, bajo el Artículo 1803 del Código Civil, en cuanto a la responsabilidad por daños causados por un menor de edad, no debe responder el apelante Ortiz Torres porque, aunque se encuentra casado con Sullivan, no es el padre del joven. No les asiste la razón.
Valga aclarar que la responsabilidad del apelante Ortiz Torres no se desprende del Artículo 1803 del Código Civil, 31 L.P.R.A. see. 5142, en cuanto a la taxativa enumeración de los casos de responsabilidad vicaria que preceptúa dicha sección. La responsabilidad legal de los dos adultos de epígrafe y la sociedad legal que ambos componen por los daños físicos causados por el menor responde a que el vehículo de motor de los apelantes fue adquirido por dicha sociedad y el menor manejaba el vehículo con autorización expresa de ellos. Ello se desprende de las propias determinaciones de hecho realizadas por el TPI mediante la sentencia recurrida, las cuales adoptamos en su totalidad por ser esencialmente correctas.
De igual forma, la Ley Núm. 22 de 7 de enero de 2000, según enmendada, conocida como la Ley de Vehículos y Tránsito de Puerto Rico, en su Art. 22.01 regula la responsabilidad de los dueños de vehículo de motor cuando medie culpa o negligencia. 9 L.P.R.A. see. 5621.
Dice el Artículo 22.01 lo siguiente:

“El dueño de cualquier vehículo de motor será responsable de los daños y perjuicios que se causen mediante la operación de dicho vehículo, interviniendo culpa o negligencia, cuando el referido vehículo sea operado o esté bajo el control físico y real de cualquier persona que, con el fin principal de operarlo, o de hacer o permitir que el mismo sea operado por tercera persona, obtenga su posesión mediante la autorización expresa o tácita del dueño. En todo caso se presumirá, salvo prueba en contrario, que la persona que opera o tiene bajo su dominio o control un vehículo de motor, ha obtenido su posesión con la autorización de su dueño, con elfin principal de operarlo, o de hacer o permitir que el mismo sea operado por tercera persona.

La persona por cuya negligencia haya de responder el dueño de un vehículo de acuerdo con las disposiciones del párrafo anterior vendrá obligada a indemnizar a éste. ”

El propósito legislativo de esta sección fue "garantizar a cualquier persona la reparación de los daños causados mediante la operación culposa o negligente de un vehículo de motor, cuando la posesión del mismo fue entregada voluntariamente por su dueño." Cordero Santiago v. Lizardi Caballero, 89 D.P.R. 150, 158 (1963). Esta sección constituye una de las excepciones principales al principio que rige la responsabilidad extracontractual en Puerto Rico. Establece que el dueño de un vehículo de motor es responsable de los daños y perjuicios causados por la operación negligente o culposa de dicho vehículo, si el conductor del mismo obtuvo su posesión mediante la autorización del dueño. Nieves Vélez v. Bansander Leasing Corp., 136 D.P.R. 827 (1994). Esa autorización puede ser expresa o tácita. Cordero Santiago, supra. Por consiguiente, el estatuto señala expresamente que el mero hecho de que un tercero conduzca, opere o tenga bajo su dominio o control un vehículo de motor, establece una presunción de carácter controvertible a los efectos de que dicho tercero ha obtenido la posesión del vehículo con la autorización de su dueño. íd. El hecho determinante es la posesión autorizada y no el uso autorizado del vehículo. Nieves Vélez v. Bansander Leasing Corp., supra. Por eso, "la conducción por un tercero autorizado por la persona a quien se confió el vehículo, equivale a la posesión autorizada de éste." McGee Quiñones v. Palmer, 91 D.P.R. 464, 469 (1964).
*1039 La sección 5621, supra, debe ser interpretada liberalmente a favor de la responsabilidad que ella impone. Nieves Vélez v. Bansander Leasing Corp., supra; González v. Seatrain Lines of P.R., 106 D.P.R. 494, 500 (1977). Ello, sin embargo, no significa que el tribunal está obligado a determinar responsabilidad del dueño. Después de todo, estamos ante una presunción controvertible. Por ende, el dueño no responde si la prueba derrota la presunción estatutaria de autorización al tercero.
Cómo pudimos apreciar, del expediente no se desprende prueba alguna que rebata la presunción antes esbozada. En este caso, se probó que el joven Torres Sullivan tenía la posesión del automóvil que impactó el vehículo de motor de los apelados y que éste fue el responsable directo del accidente. Además, surge de forma incontrovertida de los testimonios ofrecidos por los testigos de la propia parte apelante, que Torres Sullivan poseía y manejaba el vehículo con el conocimiento o autorización de los dueños apelantes. Su testimonio no fue objetado ni contradicho en forma alguna. Ante este cuadro fáctico, no erró el TPI al adjudicar responsabilidad a la sociedad legal de gananciales por los daños causados por Torres Sullivan.
Establecida la procedencia de la obligación cuando se causa daño por culpa o negligencia y los llamados a responder, corresponde auscultar los errores cuarto y quinto a la luz del derecho expuesto. Los mismos versan sobre la valorización de los daños, la fijación de las cuantías a ser resarcidas y la corrección en la adjudicación de las mismas. En cuanto a ambos errores, les asiste la razón a los apelantes, en parte.
Luego de examinar los hechos acaecidos en este caso, somos de opinión que TPI se excedió en la valorización de los daños sufridos, solamente en cuanto a la menor Omayra Janice, a quien se le concedió una compensación de $10,000 por los daños morales sufridos. Veamos por qué.
A diferencia de su hermanita Lizbeth y sus padres, cuya extensión de los daños sufridos repasamos, avalando así la compensación conferida por el TPI, Omayra Janice recibió rasguños en el codo izquierdo y golpes leves en una rodilla. La menor de edad fue evaluada la misma noche del accidente en el Hospital Menonita de Cayey y no hubo necesidad de requerir tratamiento médico ulterior. Los daños sufridos por ella giran más en tomo a la vertiente mental que a la física en lo que se refiere a los daños morales, toda vez que vio a su hermanita sufrir y prescindió del afecto, cuido, atención y cariño de su madre por ésta haberse visto obligada a cuidar de la otra niña durante el periodo de hospitalización y rehabilitación mencionado. Entendemos que la concesión de $10,000 otorgada a la menor de edad Omayra Janice por concepto de daños físicos y angustias mentales sufridos resulta excesiva, por lo que procede reducir la cantidad concedida a $5,000.
En cuanto a la compensación de $3,000 impuesta a la sociedad legal de gananciales, a ser satisfecha por concepto de las pérdidas causadas al vehículo de motor de los apelados, se elimina la misma por constituir una doble compensación y enriquecimiento injusto. Veamos por qué.
En el presente pleito, los apelantes reclaman que perdieron su vehículo de motor como resultado del accidente. Sin embargo, de la exposición narrativa de la prueba se desprende que la reclamación efectuada al seguro del vehículo ya había sido resarcida por la cantidad de $800, por lo que no debe proceder un reclamo adicional de indemnización contra los apelantes. Esto constituiría una doble compensación, no aceptada en nuestro ordenamiento jurídico.
Conviene señalar respecto a lo anterior que se ha establecido que si la víctima ha recibido una compensación por virtud de un seguro contra pérdida de cosas, como regla general, no se admitirá la acumulación de beneficios. Canales v. Pan American 112 D.P.R. 329, 343 (1982). Recordemos que, en casos de accidentes, ‘‘[l]a víctima no puede reclamar varias indemnizaciones por el mismo perjuicio. ” Futurama v. Trans Caribbean, 104 D.P.R. 609, 613 (1976).
*1040 vr
Por los fundamentos que anteceden, se modifica la sentencia enmendada apelada a los fines de modificar la cuantía concedida a la menor de edad Omayra Janice Sierra López de $10,000 a $5,000 y eliminar la cantidad de $3,000 concedida como compensación por la pérdida del vehículo de motor según reclamado por los apelantes. Por lo demás, se confirma la sentencia en controversia.
El Juez Salas Soler concurre con la laboriosa y extensa opinión con la excepción, de que no reduciría la cuantía de los daños concedidos por instancia a la menor Omayra Janice Sierra López.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones
ESCOLIOS 2005 DTA 43
1. Véase Apelación, índice del Apéndice, Anejo 1, Sentencia, a la pág. 7.
2. Véase Apelación, a la pág. 4.
3. Véase Exposición Narrativa de la Prueba, a la pág. 2.